# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2750 | **DATE** | 3/23/2001 |
| **CASE TITLE** | John McCormick vs. Gerald Zero | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. In summary, plaintiffs are entitled to an award in the full amount requested - $185,513.50 in attorneys' fees, $5,919.46 in litigation expenses over and above taxable costs and $1,763.60 in taxable costs, or a total of $193,196.50. This Court orders that judgment be entered in favor of plaintiffs and against defendants Gerald Zero and Local 705 jointly and severally.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | number of notices | | Document Number |
|---|---|---|---|---|---|---|---|
| | No notices required. | | | | | | 11 |
| | Notices mailed by judge's staff. | | | MAR 2 6 2001 | | | |
| | Notified counsel by telephone. | | | date docketed | | | |
| ✓ | Docketing to mail notices. | | | | | | |
| | Mail AO 450 form. | | | docketing deputy initials | | | |
| | Copy to judge/magistrate judge. | | | | | | |
| SN | courtroom deputy's initials | | Date/time received in central Clerk's Office | | mailing deputy initials | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOHN B. McCORMICK, ED BENESCH, )
BENNIE JACKSON and )
STEVE POCZTOWSKI, )
)
Plaintiffs, )
)
v. ) No. 00 C 2750
)
GERALD ZERO and LOCAL 705, )
INTERNATIONAL BROTHERHOOD OF )
TEAMSTERS, )
)
Defendants. )

MAR 2 6 2001

## MEMORANDUM OPINION AND ORDER

This previously-dismissed action is at an end except for the unresolved question of the amount of fees and litigation expenses to be awarded to plaintiffs as prevailing parties. There is no question as to their prevailing party status: As the result of the preliminary injunction that this Court entered after an extensive hearing (the extended findings of fact and conclusions of law are reported at 110 F.Supp.2d 716-42 (N.D. Ill. 2000)), plaintiffs obtained all of the relief that they sought in this litigation, including their retention as officers of Local 705, International Brotherhood of Teamsters ("Local 705") at full pay for the entirety of their elected tenure. Indeed, that prevailing party status is fully recognized by the 1-1/2 page response to plaintiffs' motion filed by Local 705's independent counsel, which confirms (Response at 2 n.1):

> We, of course, recognize that Plaintiff did not lose
> the appeal. If that had happened, Plaintiff would not

have been entitled to <u>any</u> fees. We are not contesting Plaintiffs' entitlement for work due <u>up</u> to September 5, 2000.

Instead the only question put into issue by Local 705 is whether work done after the appeal from the preliminary injunction was filed by codefendant Gerald Zero ("Zero") (hence the September 5 date) should be compensable.

In much the same vein that has marked his conduct both before and during the litigation--it was his own malfeasance that triggered the lawsuit and spawned the need for the extensive (and hence expensive) legal services to begin with--Zero has filed a less forthright response. Although his Statement on Attorneys' Fees begins by stating that he "believes a fair and equitable resolution of this matter would be to limit an award of fees and costs to the amount expended in the District Court only," he goes on to hedge that on the next page:

> While Defendant Zero believes that Plaintiffs' entitlement to attorneys' fees may not survive because the case is moot, nevertheless Defendant Zero is willing to agree to an award of fees for the District Court proceedings.

There is simply no legitimate predicate for any suggestion that the dismissal of the appeal on the mootness grounds that operated here--plaintiffs' having recovered full relief until they were no longer Local 705 officers, so that nothing then remained in controversy (see our Court of Appeals' unpublished March 2, 2001 order in its Case No. 00-3263)--somehow defeats

2

plaintiffs' previously obtained prevailing party status, as would have been the case if such status had been predicated on obtaining preliminary injunctive relief that was then <u>reversed</u> on appeal. Although it was not Zero's efforts that created the mootness condition (a scenario that understandably does not defeat an opponent's entitlement to fees under <u>Young v. City of Chicago</u>, 202 F.3d 1000 (7th Cir. 2000)(per curiam) and the numerous cases cited there), the sequence of events here clearly calls for the same result. That is the plain teaching of the cases from other circuits that were cited and relied upon in <u>Young</u>.

This opinion therefore turns to the remaining questions: whether plaintiffs' attorneys' fees and expenses incurred (1) in connection with the appeal (a subject that the Court of Appeals could not address because it lacked jurisdiction over the appeal on Article III case-or-controversy grounds--see pages 3-4 of its unpublished March 2 order) and (2) for their services that led to the now-pending criminal contempt proceedings against Zero are also recoverable. On that score the caselaw does not parse a prevailing party's fees incurred on an issue-by-issue basis, as Local 705's and Zero's opposition to plaintiffs' request suggests. Instead the underlying principle as to prevailing party status is that expressed succinctly in the seminal opinion in <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983)(internal

quotation marks omitted):

> The standard for making this threshold determination
> has been framed in various ways. A typical formulation
> is that plaintiffs may be considered prevailing parties
> for attorney's fees purposes if they succeed on any
> significant issue in litigation which achieves some of
> the benefit the parties sought in bringing suit.

And as plaintiffs' counsel have correctly pointed out, <u>Jaffee v. Redmond</u>, 142 F.3d 409, 414 (7th Cir. 1998) provides a graphic example of the full recoverability of a prevailing party's fees even though a substantial part of the litigation resulted in an outright setback to that party (as was not true here).

As for Zero's appeal from the preliminary injunction, this is not at all a matter of attempting to read the tea leaves to determine which side might have prevailed on the appeal. No one was at fault because the time for any possible <u>further</u> recovery by plaintiffs ran out before the fully briefed and argued appeal had reached the point of decision. Instead there is no reason to depart from the type of prevailing party determination that controlled in <u>Hensley</u> and <u>Jaffee</u> and like cases. In that respect the analysis in such cases as <u>Bagby v. Beal</u>, 606 F.2d 411, 414-15 (3d Cir. 1979) squarely supports plaintiffs' entitlement here--and though District Court decisions do not carry precedential force, <u>Doe v. Terhune</u>, 121 F.Supp.2d 773, 778-80 (D. N.J. 2000) sets out a comprehensive analysis that might well have been written for this case, awarding fees to a plaintiff in an identical situation.

4

That <u>Hensley</u>-<u>Jaffee</u> type of analysis applies as well to the time spent by plaintiffs' counsel in conjunction with the proceeding that ended with referral to the United States Attorney's Office for a determination as to the institution of criminal contempt charges against Zero (as the Assistant United States Attorney in charge of the matter has most recently reported, the matter is now actively pending, and the confidentiality of grand jury proceedings naturally makes any further inquiry inappropriate). All that plaintiffs could do as private litigants was to provide input on the subject, seeking the institution of such proceedings. They did that, and they were successful in the only way that they could be: This Court referred the matter to the United States Attorney's Office. Again no carving out of the lawyer's time spent on that matter, to await the ultimate outcome of a procedure that plaintiffs cannot control (or indeed cannot participate in as protagonists), would be appropriate.

In summary, plaintiffs are entitled to an award in the full amount requested--$185,513.50 in attorneys' fees, $5,919.46 in litigation expenses over and above taxable costs and $1,763.60 in taxable costs, or a total of $193,196.50. This Court orders that judgment be entered in favor of plaintiffs and against defendants Gerald Zero and Local 705 jointly and severally. That joint and several award is made to provide the maximum assurance of

collectibility by plaintiffs, and it is made expressly without prejudice to Local 705's right to seek recovery against Zero (as the culpable party) of any amount that plaintiffs may collect from Local 705 in the first instance.[1]

Milton I. Shadur
Senior United States District Judge

Date: March 23, 2001

---

[1] This Court is of course well aware that Zero was the successful candidate for the posts of Secretary-Treasurer and Principal Executive Officer in Local 705's December 2000 election (see page 3 of the Court of Appeals' unpublished March 2 order). But when it comes to the issue of primary liability for the amount adjudicated here, he is in the same inherent conflict of interest position that caused this Court to require the union to obtain separate representation in this litigation (originally the same legal counsel had inappropriately been retained to represent both Zero and Local 705). Any issue in that respect must of course await future events.